**No. 12-55578**

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

FATEMEH JOHNMOHAMMADI,
*Plaintiff–Appellant,*

v.

BLOOMINGDALE'S, INC.,
*Defendant–Appellee.*

---

Appeal from an Order of the United States District Court
for the Central District of California, No. 2:11-cv-06434-GW-AJW
Hon. George H. Wu, United States District Judge

---

**BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANT-APPELLEE**

---

Robin S. Conrad
Shane B. Kawka
NATIONAL CHAMBER LITIGATION
   CENTER, INC.
1615 H Street, NW
Washington, DC 20062
(202) 463-5337

Andrew J. Pincus
Evan M. Tager
Archis A. Parasharami
Richard B. Katskee
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

*Counsel for* Amicus Curiae

## CORPORATE DISCLOSURE STATEMENT

The Chamber of Commerce of the United States of America is a nonprofit corporation organized under the laws of the District of Columbia. It has no parent corporation. No publicly held corporation owns ten percent or more of its stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ..........................................i

TABLE OF AUTHORITIES ..................................................iii

INTEREST OF THE *AMICUS CURIAE* ..............................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .........................2

ARGUMENT ........................................................................4

I.   The District Court Correctly Held That The FAA Requires Enforcement Of Voluntary Agreements To Arbitrate On An Individual Basis. ...........................................................4

    A.   The FAA requires courts to enforce arbitration agreements according to their terms. ..................................4

        1.   The guarantee of enforceability extends to agreements to arbitrate on an individual basis. ........6

        2.   The FAA's enforceability policy may be displaced only by a clear congressional command. ................................................10

    B.   Neither the NLRA nor the Norris–LaGuardia Act contains a clear congressional command to override the FAA. ......................................................11

        1.   The Norris–LaGuardia Act. ......................................13

        2.   The National Labor Relations Act. ...........................17

II.   Affirmance Of The District Court's Decision Will Benefit Employees, Businesses, And The National Economy. ................29

CONCLUSION ...................................................................34

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) ............................... 30

*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995)............... 30

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)......................... 9

*Andrus v. D.R. Horton, Inc.*, 2012 WL 5989646
(D. Nev. Nov. 5, 2012)......................................................................... 23

*AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011).........*Passim*

*Boys Mkts., Inc. v. Retail Clerks Union, Local 770*,
398 U.S. 235 (1970)............................................................................ 14

*Brady v. Nat'l Football League*,
644 F.3d 661 (8th Cir. 2011) ............................................................ 26

*Brown v. Trueblue, Inc.*, 2012 WL 1268644
(M.D. Pa. Apr. 16, 2012).................................................................... 23

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991) ................. 33

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) ................. 1, 31

*Cohen v. UBS Fin. Servs., Inc.*, 2012 WL 6041634
(S.D.N.Y. Dec. 4, 2012)...................................................................... 22

*CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012)............*Passim*

*Coneff v. AT&T Corp.*, 673 F.3d 1155 (9th Cir. 2012) ......................... 20

*D.R. Horton, Inc. v. NLRB*, No. 12-60031
(5th Cir., notice of appeal filed Jan. 13, 2012)................................ 24

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) ..................... 5

*Delock v. Securitas Sec. Servs. USA, Inc.*,
__ F. Supp. 2d __, 2012 WL 3150391 (E.D. Ark. Aug.1, 2012) ........ 23

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Discover Bank v. Super. Ct.*, 113 P.3d 1100 (Cal. 2005) ........................ 7

*Eastex, Inc. v. NLRB*, 437 U.S. 556 (1978) .......................................... 26

*EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002) ......................... 11, 17

*Gen. Elec. Co. v. Local 205, United Elec., Radio & Mach. Workers of Am. (U.E.)*, 353 U.S. 547 (1957) ................................. 2, 16

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) ................................................................... *Passim*

*Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000) .............. 11

*Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002) ................................................................... 28

*Homa v. Am. Express Co.*, 2012 WL 3594231 (3d Cir. Aug. 22, 2012) ...................................................... 20

*In re 127 Rest. Corp.*, 221 NLRB 269 (2000) ..................................... 17

*In re D.R. Horton, Inc.*, 357 NLRB No. 184 (2012) ..................... *Passim*

*Italian Colors Rest. v. Am. Express Travel Related Servs. Co.* (*In re Am. Express Merchants' Litig.*), 667 F.3d 204 (2d Cir.), *cert. granted*, 133 S. Ct. 594 (2012) ................................................. 21

*Italian Colors Rest. v. Am. Express Travel Related Servs. Co.* (*In re Am. Express Merchants' Litig.*), 681 F.3d 139 (2d Cir. 2012) .............................................................................. 21

*Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702 (1982) .......................................................... 14

*Jasso v. Money Mart Express, Inc.*, __ F. Supp. 2d __, 2012 WL 1309171 (N.D. Cal. Apr. 13, 2012) .................................. 23

iv

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Kilgore v. KeyBank, Nat'l Ass'n*, No. 09-16703 (9th Cir.) ...................... 1

*KPMG LLP v. Cocchi*, 132 S. Ct. 23 (2011) .......................................... 4

*LaVoice v. UBS Fin. Servs., Inc.,* 2012 WL 124590 23
    (S.D.N.Y. Jan.13, 2012).................................................................... 15

*Lincoln Fed. Labor Union No. 19129, A.F. of L. v. Nw. Iron &*
    *Metal Co.*, 335 U.S. 525 (1949)......................................................... 16

*Local 205, United Elec., Radio & Mach. Workers of Am. (U.E.) v.*
    *Gen. Elec. Co.*, 233 F.2d 85 (1st Cir. 1956), *aff'd*, 353 U.S. 547
    (1957) ................................................................................................ 16

*Marine Cooks & Stewards, AFL v. Panama S.S. Co.,*
    362 U.S. 365 (1960).................................................................... 3, 14

*Marmet Health Care Ctr., Inc. v. Brown,*
    132 S. Ct. 1201 (2012)......................................................................... 5

*Milk Wagon Drivers' Union, Local No. 753 v. Lake Valley Farm*
    *Prods., Inc.*, 311 U.S. 91 (1940) ........................................................ 14

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,*
    473 U.S. 614 (1985)...............................................................*Passim*

*Morvant v. P.F. Chang's China Bistro, Inc.,*
    870 F. Supp. 2d 831 (N.D. Cal. 2012)......................................... 16, 23

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983)................................................................................ 20

*NLRB v. Bildisco & Bildisco,* 465 U.S. 513 (1984) .............................. 28

*NLRB v. City Disposal Sys. Inc.*, 465 U.S. 822 (1984)........................ 26

*NLRB v. Harco Trucking, LLC*, 344 NLRB 478 (2005) ....................... 26

# TABLE OF AUTHORITIES
## (continued)

**Page**

*NLRB v. Mojave Elec. Coop.*, 327 NLRB No. 13 (1998),
  *enf'd*, 206 F.3d 1183 (D.C. Cir. 2000) ............................................... 26

*NLRB v. Stone*, 125 F.2d 752 (7th Cir. 1942) ...................................... 27

*NLRB v. Superior Tanning Co.*, 117 F.2d 881 (7th Cir. 1940) ............. 26

*NLRB v. United Parcel Serv., Inc.*, 252 NLRB 1015 (1980),
  *enf'd*, 677 F.2d 421 (6th Cir. 1982) .................................................. 26

*Nat'l Licorice Co. v. NLRB*, 309 U.S. 350 (1940) ........................... 24, 25

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ..................................... 9

*Owen v. Bristol Care, Inc.*, 2012 WL 1192005
  (W.D. Mo. Feb. 28, 2012) ................................................................ 23

*Raniere v. Citigroup Inc.,* 827 F. Supp. 2d 294 (S.D.N.Y. 2011) .......... 23

*Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772 (2010) .................... 1

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
  490 U.S. 477 (1989) ................................................................... 10, 18

*Salt River Valley Water Users' Ass'n v. NLRB*, 206 F.2d 325
  (9th Cir. 1953) ................................................................................ 26

*Sanders v. Swift Transp. Co.*, 843 F. Supp. 2d 1033
  (N.D. Cal. 2012) .............................................................................. 23

*Shearson/Am. Express, Inc. v. McMahon*,
  482 U.S. 220 (1987) ................................................................. *Passim*

*Spears v. Mid-Am. Waffles, Inc.*, 2012 WL 2568157
  (D. Kan. July 2, 2012) .................................................................... 23

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  130 S. Ct. 1758 (2010) ............................................................. *Passim*

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Stutler v. T.K. Constructors Inc.*, 448 F.3d 343 (6th Cir. 2006) ........... 21

*Tenet HealthSystem Phila., Inc. v. Rooney*,
  2012 WL 3550496 (E.D. Pa. Aug. 17, 2012) ..................................... 22

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*,
  489 U.S. 468 (1989) ............................................................................ 5


**STATUTES AND RULES**

Age Discrimination in Employment Act, 29 U.S.C. § 621 .................... 6

Credit Repair Organizations Act, 15 U.S.C. § 1679f(a) ...................... 18

Dodd-Frank Wall Street Reform and Consumer Protection Act
  Pub. L. No. 111-203, 124 Stat. 1376 (2010)

  § 748(n), 124 Stat. at 1745 ............................................................... 19

  § 921, 124 Stat. at 1840 .................................................................... 19

Federal Arbitration Act, 9 U.S.C. §§ 1-16 ............................................ 1

  9 U.S.C. § 2 ........................................................................................ 5

National Labor Relations Act, 29 U.S.C. § 157 .......................... 3, 12, 17

Norris–LaGuardia Act

  29 U.S.C. § 102 .......................................................................... 11, 12, 13

  29 U.S.C. § 103 .............................................................................. 15, 16

  29 U.S.C. § 104 ................................................................................. 14

Fed. R. Civ. P. 23 .................................................................................. 9

Fed. R. App. P. 29 ................................................................................. 1

# TABLE OF AUTHORITIES
## (continued)

**Page**

**OTHER AUTHORITIES**

JOHN W. COOLEY & STEVEN LUBET, ARBITRATION ADVOCACY ¶
1.3.1 (2d ed. 2003) ............................................................... 32

Michael Delikat & Morris M. Kleiner, *An Empirical Study of
Dispute Resolution Mechanisms: Where Do Plaintiffs Better
Vindicate Their Rights?* 58 DISP. RESOL. J. 56 (Nov. 2003-Jan.
2004) ................................................................... 32, 33

Elizabeth Hill, *AAA Employment Arbitration: A Fair Forum at
Low Cost*, 58 DISP. RESOL. J. 9 (2003)................................. 31

Lewis L. Malty, *Private Justice: Employment Arbitration and
Civil Rights*, 30 COLUM. HUM. RTS. L. REV. 29 (1998) .................... 32

NLRB General Counsel's Memorandum 10-06............................. 27, 28

Theodore J. St. Antoine, *Mandatory Arbitration: Why It's Better
Than It Looks*, 41 U. MICH. J.L. REFORM 783 (2008)...................... 32

Stephen J. Ware, *The Case for Enforcing Adhesive Arbitration
Agreements—With Particular Consideration of Class Actions
and Arbitration Fees,* 5 J. AM. ARB. 251 (2006) ................................ 33

## INTEREST OF THE *AMICUS CURIAE*

The Chamber of Commerce of the United States of America is the world's largest business federation, representing 300,000 direct members and indirectly representing an underlying membership of more than three million U.S. businesses and professional organizations of every size and in every economic sector and geographic region of the country.[1] The Chamber regularly files *amicus* briefs in cases that raise issues of vital concern to the nation's business community, including cases involving the enforceability of arbitration agreements. *See*, *e.g.*, *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011); *Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772 (2010); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001); *Kilgore v. KeyBank, Nat'l Ass'n*, No. 09-16703 (9th Cir.) (reh'g en banc pending). Because the simplicity, informality, and expedition of arbitration depend on the courts' consistent recognition and

---

[1] In accordance with Federal Rule of Appellate Procedure 29(c)(5), *amicus* affirms that no counsel for a party authored this brief in whole or in part and that no person other than the *amicus*, its members, or their counsel made a monetary contribution intended to fund its preparation or submission. All parties have consented to the filing of this brief.

application of the principles underlying the Federal Arbitration Act, 9 U.S.C. §§ 1-16, the Chamber and its members have a strong interest in this case.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The FAA's general principle that courts must enforce an arbitration agreement as written applies when the agreement requires disputes to be arbitrated on an individual basis. That is the holding of the Supreme Court's decision in *Concepcion*. 131 S. Ct. at 1748. Indeed, so strong is the federal policy favoring arbitration that only a clear congressional command in a federal statute can override it. *See, e.g.*, *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012).

Neither the Norris–LaGuardia Act nor the National Labor Relations Act includes any such congressional command. On the contrary, the Supreme Court has straightforwardly held that the Norris–LaGuardia Act does not bar enforcement of arbitration agreements. *See Gen. Elec. Co. v. Local 205, United Elec., Radio & Mach. Workers of Am. (U.E.)*, 353 U.S. 547, 548 (1957). What it does—all it does—is limit the federal courts' jurisdiction over labor disputes.

*See Marine Cooks & Stewards, AFL v. Panama S.S. Co.*, 362 U.S. 365, 372 (1960).

As for the NLRA, Johnmohammadi argues that requiring arbitration of her state-law claims on an individual basis would deprive her of a federal right to engage in "concerted activities" under 29 U.S.C. § 157. But that phrase in no way constitutes a clear, unambiguous statement of Congress's intent either to foreclose arbitration or to require a form of arbitration other than that to which the parties agreed. If it did, then essentially no employment dispute could ever be the subject of binding arbitration. Yet the Supreme Court has held that just the opposite is the case. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991).

In finding that Johnmohammadi's arbitration agreement is enforceable and ordering that her claims be arbitrated, the district court properly applied the holdings of the Supreme Court and this Court. In doing so, the district court respected congressional intent as well as the intent of the parties when they entered into what the court correctly found to be a voluntary agreement to arbitrate.

That decision is just as correct as a matter of policy. Arbitration is faster, easier, and less expensive than litigation. It thus benefits

3

everyone—but most especially employees, who, as the Supreme Court and legal scholars alike have recognized, are particularly likely to have small, individualized claims that would necessarily go entirely unredressed if a civil action in court were their only recourse.

In short, the district court's application of settled precedent was not just legally required, but also is highly desirable for employees, consumers, businesses, and the national economy. To reverse the district court, as Johnmohammadi urges, would not only frustrate the will of Congress but also eliminate all the benefits that arbitration offers. The judgment should therefore be affirmed.

## ARGUMENT

### I. The District Court Correctly Held That The FAA Requires Enforcement Of Voluntary Agreements To Arbitrate On An Individual Basis.

#### A. The FAA requires courts to enforce arbitration agreements according to their terms.

"The Federal Arbitration Act reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25 (2011) (per curiam) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 631 (1985)). Although arbitration agreements remain subject to generally applicable state

contract law,[2] the FAA affords contracting parties the freedom to "structure their arbitration agreements as they see fit," and to "specify by contract the rules under which…arbitration will be conducted" (*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989)).

Federal law thus protects parties' freedom to determine which issues will be arbitrated and who will participate in each arbitration proceeding; to prescribe the procedural rules that will govern the arbitration; and to select the arbitrator who will resolve their disputes. *See, e.g.*, *Concepcion*, 131 S. Ct. at 1748-49; *Stolt-Nielsen*, 130 S. Ct. at 1774. In short, the FAA "makes arbitration agreements 'valid, irrevocable, and enforceable' as written." *Concepcion*, 131 S. Ct. at 1748 (quoting FAA, 9 U.S.C. § 2).[3]

---

[2]   *See, e.g.*, *Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1202 (2012) (per curiam) (remanding to determine "whether, absent that general public policy, the arbitration clauses…are unenforceable under state common law principles that are not specific to arbitration and pre-empted by the FAA").

[3]   *Accord, e.g.*, *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217 (1985) (FAA by its plain language "requires courts to enforce the bargain of the parties to arbitrate") (quoted in *Marmet*, 132 S. Ct. at 1203).

### 1. The guarantee of enforceability extends to agreements to arbitrate on an individual basis.

The Supreme Court has twice held that the FAA guarantees the right to enter into enforceable agreements that require the parties to arbitrate on an individual basis and to forgo aggregating their claims through class or collective actions.

1. More than twenty years ago, the Supreme Court declared that an arbitration clause in an employment contract must be enforced, and that the employee's claims under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, must therefore be arbitrated, "even if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator." *Gilmer*, 500 U.S. at 32 (internal quotation marks omitted). The Court did so notwithstanding that the ADEA expressly authorizes "courts to award broad, class-based injunctive relief." *Id.* at 41-42 (Stevens, J., dissenting).

As the Court explained, "the fact that the ADEA provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred." *Id.* at 32 (internal quotation marks omitted). Because Congress did not specifically say that the ADEA displaces the FAA, a contract

6

requiring arbitration of employment-related claims on an individual basis applies to ADEA claims, just as it does to all other claims. *Id.* at 26.

2.  Less than two years ago, the Supreme Court reaffirmed that the FAA authorizes agreements to arbitrate on an individual basis and makes those agreements enforceable as written, even if, for example, "class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system." *Concepcion*, 131 S. Ct. at 1753. The plaintiffs in *Concepcion* had argued that because their arbitration agreement precluded them from pursuing class-wide relief, it was unconscionable—and therefore unenforceable—under California's *Discover Bank* rule (which effectively imposed a *per se* ban on agreements to arbitrate modest-sized claims on an individual basis). *Id.* at 1745; *see Discover Bank v. Super. Ct.*, 113 P.3d 1100 (Cal. 2005). But the Supreme Court rejected that argument, holding that the FAA preempts *Discover Bank* because "[r]equiring the availability of classwide arbitration procedures interferes with fundamental attributes of arbitration." *Concepcion*, 131 S. Ct. at 1748.

The Court explained: "The point of affording parties discretion in designing arbitration" is "to allow for efficient, streamlined procedures tailored to the type of dispute" at issue. *Id.* at 1749. That purpose would be frustrated if class-action waivers were not fully enforceable. Because class-wide resolution of claims "requires procedural formality" to comply with due process, mandating class arbitration "sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *Id.* at 1751 (emphasis omitted).[4]

---

[4] The Court further reasoned that, given the high stakes of class arbitration and the absence of an "effective means of review" of an erroneous class-certification decision or class-wide arbitral award, it is "hard to believe that defendants would bet the company" by agreeing to arbitration of class or collective actions. *Id.* at 1752. Instead, they would likely give up on arbitration altogether—precisely the opposite of what Congress intended. Thus, not only is an agreement to arbitrate on an individual basis fully enforceable, but because "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so," courts must presume that class and collective arbitration are foreclosed unless an arbitration agreement explicitly says otherwise. *Stolt-Nielsen*, 130 S. Ct. at 1775-76 ("the differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties' mere silence on the issue of class-

Congressional intent and legal history confirm what logic and statutory language dictate: When Congress enacted the FAA in 1925 "to promote arbitration" (*Concepcion*, 131 S. Ct. at 1749), the type of arbitration that it necessarily had in mind was individualized, because that was all that existed at the time. Class arbitration "is a 'relatively recent development'"—more so even than the damages class action, which itself did not come into being until 1966. *Id.* at 1751.[5] Perforce, class-wide arbitration "was not even envisioned by Congress when it passed the FAA in 1925." *Id.* Hence, it is hardly surprising that the FAA's legislative history "contains nothing—not even the testimony of a stray witness in committee hearings—that contemplates the existence of class arbitration." *Id.* at 1749 n.5.

-----------------

action arbitration constitutes consent to resolve their disputes in class proceedings").

[5]    "[M]odern class action practice emerged in the 1966 revision of Rule 23" of the Federal Rules of Civil Procedure (*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833 (1999)), which gave federal-court class actions their "current shape" (*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)). Revised Rule 23's "'most adventuresome' innovation" was its authorization of "class actions for damages designed to secure judgments binding all class members save those who affirmatively elected to be excluded." *Id.* at 614-15.

In short, a legal rule requiring class procedures, whether in court or in arbitration, "interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id.* at 1748.

### 2. The FAA's enforceability policy may be displaced only by a clear congressional command.

The federal policy favoring arbitration is so strong that a clear congressional command is necessary to displace the FAA "even when the claims at issue are federal statutory claims." *CompuCredit*, 132 S. Ct. at 669.[6] When federal law is "silent" as to whether Congress intended to override the FAA for a particular type of claim, "the FAA requires the arbitration agreement to be enforced according to its terms," regardless of whether the source of the claim is federal or state law. *Id.* at 673.[7]

---

[6] *Accord, e.g.*, *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Mitsubishi*, 473 U.S. at 628.

[7] Thus, the Supreme Court has routinely held that federal statutes do not override the FAA even when they make private rights of action (or even all statutory rights) nonwaivable. *See CompuCredit*, 132 S. Ct. at 674 (Credit Repair Organization Act, which includes nonwaiver provision); *Gilmer*, 500 U.S. at 28 n.3, 35 (Age Discrimination in Employment Act, which allows for waiver only if it is "knowing and voluntary"); *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484-86 (1989) (Securities Act of 1933,

**B.    Neither the NLRA nor the Norris–LaGuardia Act contains a clear congressional command to override the FAA.**

The Norris–LaGuardia Act declares that workers should have freedom of "association, self-organization, and designation of representatives of [their] own choosing, to negotiate the terms and conditions of [their] employment," and that employers should not "interfere[]…in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 102. Drawing on this declaration of "policy" (*id.*), the NLRA recognizes the right of employees "to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other

_____

which includes nonwaiver provision); *McMahon*, 482 U.S. at 238, 242 (Securities Exchange Act of 1934 and RICO Act, both of which include nonwaiver provisions); *Mitsubishi*, 473 U.S. at 628-29, 635 (Sherman and Clayton Acts); *see also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 295 n.10 (2002) ("federal statutory claims may be the subject of arbitration agreements that are enforceable pursuant to the FAA because the agreement only determines the choice of forum"); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000) (noting that parties agreed that Truth in Lending Act does not "evince[] an intention to preclude a waiver of judicial remedies").

11

concerted activities for the purpose of collective bargaining or other mutual aid or protection." *Id.* § 157.

Although Johnmohammadi is suing for violations of California wage-and-hour laws, she invoked the NLRA and the Norris–LaGuardia Act in response to Bloomingdale's motion to compel arbitration, arguing both below and in this Court that enforcing her arbitration agreement would violate a right under those federal statutes to, as she puts it, "seek[] redress of her [state-law] overtime claim on behalf of herself and others." Br. 8. The problem with her argument is that neither the NLRA nor the Norris–LaGuardia Act contains anything approaching a clear congressional command to override the FAA. And hence, *Concepcion*, *Stolt-Nielsen*, and *Gilmer* dictate that Johnmohammadi's arbitration agreement is fully enforceable as written—including the provision requiring that all claims be arbitrated on an individual basis.

Johnmohammadi's entire argument rests on the phrase "other concerted activities for the purpose of collective bargaining or other mutual aid or protection," which appears in both Section 2 of the Norris–LaGuardia Act, 29 U.S.C. § 102, and Section 7 of the NLRA, 29 U.S.C. § 157. She asserts that the terms "other concerted

activities" and "other mutual aid or protection" are broad enough to cover class actions in court, and she invokes various authorities for the proposition that filing a lawsuit is protected conduct. But she misses the point. The only question here is whether the Norris–LaGuardia Act or the NLRA includes a clear congressional command to override the FAA by forbidding agreements to arbitrate state wage-and-hour claims on an individual basis. *See, e.g.*, *CompuCredit*, 132 S. Ct. at 669; *McMahon*, 482 U.S. at 226 (1987); *Mitsubishi*, 473 U.S. at 628. The answer to that question is straightforward: They do not.

### 1.    The Norris–LaGuardia Act.

Section 2 of the Norris–LaGuardia Act is on its face a "declar[ation]" of "public policy" designed to inform "the interpretation of" the operative provisions of the statute "in determining the jurisdiction and authority of the courts of the United States." 29 U.S.C. § 102. Those operative provisions have nothing to do with whether disputes may be resolved through arbitration, individual or otherwise. Far from it.

The Norris–LaGuardia Act was "Congress['s] attempt[] to bring some order out of the industrial chaos that had developed and to correct the abuses that had resulted from the interjection of the

federal judiciary into union–management disputes on the behalf of management." *Boys Mkts., Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 251 (1970) (citing 29 U.S.C. § 102 as "declaration of public policy"). "Congress…determined initially to limit severely the power of the federal courts to issue injunctions 'in any case involving or growing out of any labor dispute.'" *Id.* (quoting 29 U.S.C. § 104). The Act thus broadly protects against federal-court intrusion into labor disputes. *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 708 (1982) ("This Court has consistently given the anti-injunction provisions of the Norris–LaGuardia Act a broad interpretation, recognizing exceptions only in limited situations where necessary to accommodate the Act to specific federal legislation or paramount congressional policy.").

"Congress passed the Norris–LaGuardia Act to curtail and regulate the jurisdiction of courts, not…to regulate the conduct of people engaged in labor disputes." *Marine Cooks*, 362 U.S. at 372; *see also, e.g.*, *Milk Wagon Drivers' Union, Local No. 753 v. Lake Valley Farm Prods., Inc.*, 311 U.S. 91, 101 (1940) ("The Norris–LaGuardia Act—considered as a whole and in its various parts—was intended

drastically to curtail the equity jurisdiction of federal courts in the field of labor disputes.").

To read a statute designed to keep the federal courts *out* of labor disputes as a clear congressional command that employment claims must be heard *in* those courts would defy any recognized principle of statutory construction—not to mention logic. *Cf. CompuCredit*, 132 S. Ct. at 671 (refusing to "stretch" to read statutory provision invalidating any waivers of rights as "a 'congressional command' that the FAA shall not apply," even though statute at issue expressly includes "a cause-of-action provision mentioning judicial enforcement").

The Norris–LaGuardia Act also renders "yellow dog" contracts unenforceable (29 U.S.C. § 103)[8]—which is consistent with the Act's purpose because it prevents courts from issuing injunctions to enforce those contracts. Although the yellow-dog provision generically refers to the unenforceability of "undertaking[s]" that conflict with the

---

[8]     Yellow-dog contracts were ones in which, "[b]efore hiring workers, employers required them to sign agreements stating that the workers were not and would not become labor union members." *Lincoln Fed. Labor Union No. 19129, A.F. of L. v. Nw. Iron & Metal Co.*, 335 U.S. 525, 534 (1949).

public policy announced in Section 2, the Supreme Court long ago rejected the notion that it thereby bars arbitration agreements, stating in no uncertain terms that "the Norris–LaGuardia Act does not bar the issuance of an injunction to enforce the obligation to arbitrate grievance disputes." *General Electric*, 353 U.S. at 548; *see also Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 844 (N.D. Cal. 2012) ("[T]he Norris–LaGuardia Act specifically defines those contracts to which it applies. An agreement to arbitrate is not one of those….") (citing 29 U.S.C. § 103(a)-(b)).

As the First Circuit put it, "[a]n order to compel arbitration of an existing dispute, or to stay a pending lawsuit over the dispute so that arbitration may be had, as redress for one party's breach of a prior agreement to submit such disputes to arbitration," "is not the 'temporary or permanent injunction' against whose issuance the formidable barriers of [the Act] are raised." *Local 205, United Elec., Radio & Mach. Workers of Am. (U.E.) v. Gen. Elec. Co.*, 233 F.2d 85, 91 (1st Cir. 1956), *aff'd*, 353 U.S. 547 (1957). In other words, "jurisdiction to compel arbitration is not withdrawn by the Norris–LaGuardia Act." *Id.*

16

### 2.    The National Labor Relations Act.

The language in Section 7 of the NLRA on which Johnmohammadi relies is drawn from the policy statement in Section 2 of the Norris–LaGuardia Act. As with its precursor, Section 7 offers no hint that Congress meant to bar individual arbitration, much less the clear congressional command that would be necessary to override the FAA.

1.    Johnmohammadi argues that the vaguely worded statutory protection for "other concerted activities" (29 U.S.C. § 157) should be read to trump the FAA, principally because the National Labor Relations Board has concluded that "'the filing of a civil action by employees is protected activity….'" (Br. 15 (quoting *In re 127 Rest. Corp.*, 331 NLRB 269, 275 (2000)). But if that were enough to displace the FAA, then so would the language creating private rights of action under the Credit Repair Organizations Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, RICO, the Sherman Act, the Clayton Act, and the Truth in Lending Act—express holdings of the Supreme Court to the contrary notwithstanding.[9]

---

[9]    *See, e.g.*, *CompuCredit*, 132 S. Ct. at 674 (CROA); *Waffle House*, 534 U.S. at 295 n.10 (ADA); *Green Tree*, 531 U.S. at 90 (TILA);

Notably, the Supreme Court held in *CompuCredit* that the FAA compelled enforcement of an agreement to arbitrate disputes on an individual basis even though the federal statute under which the claims were brought specifically authorizes class actions, sets forth special procedures for adjudicating them, and provides that "'[a]ny waiver…of any protection provided by or any right…under this subchapter—(1) shall be treated as void; and (2) may not be enforced by any Federal or State court or any other person.'" 132 S. Ct. at 669 (quoting 15 U.S.C. § 1679f(a)).

The Court explained that "[i]t is utterly commonplace for statutes that create civil causes of action to describe the details of those causes of action, including the relief available, in the context of a court suit." *Id*. at 670. Nonetheless, the Court reasoned, "we have repeatedly recognized that contractually required arbitration of claims satisfies the statutory prescription of civil liability in court," even when the arbitration agreement precludes the claims from being

---

*Gilmer*, 500 U.S. at 35 (ADEA); *Rodriguez de Quijas*, 490 U.S. at 484-86 (Securities Act of 1933); *McMahon*, 482 U.S. at 238, 242 (Securities Exchange Act of 1934 and RICO); *Mitsubishi*, 473 U.S. at 628-29, 635 (Sherman and Clayton Acts).

made on a class basis or in a type of proceeding described in the statute. *Id.* at 671 (citing, *e.g.*, *Gilmer*, 500 U.S. at 28). If express statutory nonwaiver provisions accompanied by specifications of class-action procedures are insufficient to displace the FAA, it follows that the NLRA's reference to "other concerted activities" must be, too.[10]

2.     Equally meritless is Johnmohammadi's argument that her arbitration agreement should be invalidated because it deprives her of substantive federal rights. Br. 22-26. As authority for that proposition, she cites only *Mitsubishi*, *Gilmer*, and *CompuCredit* (Br. 23), notwithstanding that all three held that agreements to arbitrate are fully enforceable—and two did so in the context of agreements that foreclosed class actions.

---

[10]     By contrast, when Congress does intend to limit arbitration rights, it has no difficulty saying so explicitly, as the FAA requires. *See, e.g.*, Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 748(n), 124 Stat. 1376, 1745 (2010) (prohibiting enforcement of predispute arbitration agreements for disputes arising under whistleblower provisions of Commodity Exchange Act); *id.* § 921, 124 Stat. at 1840 (granting authority for federal regulators to prohibit or limit use of arbitration agreements under Securities Exchange Act of 1934 and Investment Advisers Act of 1940).

But even if those cases actually stood for the proposition for which Johnmohammadi invokes them, there would be another, independent reason why the NLRA does not override the FAA to bar enforcement of her arbitration agreement. Johnmohammadi is not seeking to vindicate any substantive federal statutory rights; her complaint alleges only ***state*** wage-and-hour claims. *See* 1ER26.

The Supreme Court has repeatedly recognized that the FAA applies "'notwithstanding any state substantive or procedural policies to the contrary.'" *Concepcion*, 131 S. Ct. at 1749 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). And this Court has held that *Concepcion* forecloses attempts to invalidate arbitration agreements on the ground that a class action is necessary to ensure the vindication of state statutory claims. *See Coneff v. AT&T Corp.*, 673 F.3d 1155, 1158-59 & nn.2-3 (9th Cir. 2012); *see also, e.g.*, *Homa v. Am. Express Co.*, 2012 WL 3594231, at *3-4 (3d Cir. Aug. 22, 2012) (refusing to certify to New Jersey Supreme Court the question whether state statutory rights could be vindicated through individual arbitration, because "[e]ven if [the plaintiff] cannot effectively prosecute his claim in an individual arbitration that procedure is his only remedy"). The Supreme Court's

decisions referring to a vindication-of-statutory-rights approach "are limited by their plain language to the question of whether an arbitration clause is enforceable where federal statutorily provided rights are affected" and "simply do not apply" where plaintiffs "seek to enforce…rights provided by state law." *Stutler v. T.K. Constructors Inc.*, 448 F.3d 343, 346 (6th Cir. 2006).[11]

3.      Lacking Supreme Court or Ninth Circuit precedent to support her position, Johnmohammadi relied heavily in the district court on *In re D.R. Horton, Inc.*, 357 NLRB No. 184 (2012), in which the NLRB ruled that mandatory arbitration clauses forbidding class or collective actions are *per se* violations of the NLRA. *See* 1ER29-30.

---

[11]      Although a Second Circuit panel has held that the vindication-of-statutory-rights rationale for **federal** statutory rights survives *Concepcion* (*see Italian Colors Rest. v. Am. Express Travel Related Servs. Co.* (*In re Am. Express Merchants' Litig.*), 667 F.3d 204, 206 (2d Cir.)), *cert. granted*, 133 S. Ct. 594 (2012), that decision evoked three separate opinions representing five Second Circuit judges' disagreement (*see* 681 F.3d 139, 142-49 (2d Cir. 2012) (dissents from denial of rehearing en banc)) and a grant of certiorari. And the panel opinion's author has gone to great lengths to explain that the decision was limited to federal statutory claims only, and that *Concepcion* forecloses parallel arguments when the plaintiffs have asserted state statutory claims (*see id.* at 140-42 (Pooler, J., concurring in denial of reh'g en banc)).

But she gives *D.R. Horton* little more than passing mention in her opening brief in this appeal.

Perhaps that is because, as the district court correctly observed (*see* 1ER30), the NLRB limited itself in *D.R. Horton* to addressing the validity of mandatory arbitration provisions—*i.e.*, those that are made a nonwaivable condition of employment—and explicitly reserved what it regarded as "the more difficult question[]" whether the NLRA bars non-mandatory arbitration provisions (*D.R. Horton*, 357 NLRB No. 184, at 16 n.28). Here, the district court found—and Johnmohammadi does not dispute—that this case involves a "*voluntary* waiver of class representation in an employee arbitration agreement where the waiver does not function as a condition of employment" and employees have the right to opt out of the arbitration program without penalty. 1ER30.

Or perhaps Johnmohammadi has reduced her reliance on *D.R. Horton* because the Board's reasoning has been rejected by most of the courts to consider it;[12] and the decision is on review before, and

---

[12]    *See, e.g.*, *Cohen v. UBS Fin. Servs., Inc.*, 2012 WL 6041634, at *4 (S.D.N.Y. Dec. 4, 2012) (*Concepcion* forecloses arguments based on *D.R. Horton* that waiver of right to proceed collectively on FLSA claims is unenforceable); *Tenet HealthSystem Phila., Inc. v. Rooney*, 2012 WL 3550496, at *4 (E.D. Pa. Aug. 17, 2012) (rejecting *D.R.

_____

*Horton* and noting that, "[a]lthough the NLRB's construction of the NLRA is entitled to deference, the NLRB has no special competence or experience interpreting the FAA"); *Andrus v. D.R. Horton, Inc.*, 2012 WL 5989646 (D. Nev. Nov. 5, 2012) (rejecting NLRB's decision as irreconcilable with *Concepcion* and *Stolt-Nielsen*); *Brown v. Trueblue, Inc.*, 2012 WL 1268644 (M.D. Pa. Apr. 16, 2012) (provision requiring arbitration on an individual basis was not unlawful, despite *D.R. Horton*, because it did not forbid other forms of collective action); *Delock v. Securitas Sec. Servs. USA, Inc.*, __ F. Supp. 2d __, 2012 WL 3150391, at * 1–6 (E.D. Ark. Aug. 1, 2012) (*D.R. Horton* is inconsistent with Supreme Court precedent and congressional intent); *Spears v. Mid-Am. Waffles, Inc.*, 2012 WL 2568157, at *2 (D. Kan. July 2, 2012) (*D.R. Horton* cannot be reconciled with "guiding principle" of *Concepcion*); *Morvant*, 870 F. Supp. 2d at 842-45 (reasoning of *D.R. Horton* "does not overcome the direct, controlling authority holding that arbitration agreements, including class action waivers contained therein, must be enforced according to their terms"); *Jasso v. Money Mart Express, Inc.*, __ F. Supp. 2d __, 2012 WL 1309171, at *8–10 (N.D. Cal. Apr. 13, 2012) (under *CompuCredit*, because "Congress did not expressly provide that it was overriding any provision in the FAA, the Court cannot read such a provision into the NLRA"); *Sanders v. Swift Transp. Co.*, 843 F. Supp. 2d 1033, 1036 n.1 (N.D. Cal. 2012) (because plaintiff did not make any substantive claims under NLRA, his suit under California labor laws was not covered by *D.R. Horton*); *LaVoice v. UBS Fin. Servs., Inc.*, 2012 WL 124590, at *6 (S.D.N.Y. Jan. 13, 2012) (rejecting *D.R. Horton* because, under *Concepcion*, recognition of absolute right to collective action is inconsistent with FAA's overarching purpose). *But see Owen v. Bristol Care, Inc.*, 2012 WL 1192005 (W.D. Mo. Feb. 28, 2012) (relying on *D.R. Horton* to conclude that agreements requiring arbitration on individual basis violate FLSA) (appeal pending); *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294 (S.D.N.Y. 2011) (FLSA affords nonwaivable right to proceed collectively) (appeal pending).

may be set aside by, the Fifth Circuit (*see D.R. Horton, Inc. v. NLRB*, No. 12-60031 (5th Cir., notice of appeal filed Jan. 13, 2012)).

4.    In all events, though, *D.R. Horton* is based on the NLRB's systematic misreading of federal-court and Board precedents; and Johnmohammadi repeats the same error, even if she fails to identify the Board's opinion as the source of that error.

Both the Board and Johnmohammadi contend, for example, that *National Licorice Co. v. NLRB*, 309 U.S. 350 (1940), supports the view that agreements requiring arbitration of employment disputes on an individual basis violate the NLRA. *See D.R. Horton*, 357 NLRB No. 184, at 15; Br. 20. *National Licorice* cannot support the weight that the Board and Johnmohammadi put on it.

To begin with, *National Licorice* doesn't so much as mention the FAA and pre-dates by some 45 years the earliest of the Supreme Court's cases declaring that congressional intent to override the FAA will not be inferred absent unmistakably clear language in the statute. As we have already explained, the NLRA contains no such language. Hence, even if *National Licorice* offered any support for the proposition that the NLRA precludes agreements to arbitrate

employment disputes on an individual basis, it has been superseded by the Supreme Court's modern FAA case law.

But in any event, *National Licorice* does not support that proposition. In *National Licorice*, the Supreme Court agreed with the Board that a contract violated the NLRA by prohibiting submission to labor arbitration of disputes over the propriety of an employee's discharge, because "[t]he effect of this clause was to discourage, if not forbid, any presentation of the discharged employee's grievances to [the employer] through a labor organization or his chosen representatives, or in any way except personally." 309 U.S. at 360. In other words, the problem was that the employer had sought to prevent employees from obtaining union representation in disputes involving wrongful discharge. Because such disputes are inherently individualized, it is self-evident that *National Licorice* does not stand for the broader proposition that the NLRA forbids agreements to arbitrate employment disputes on an individual basis.

5.    More generally, the Board based its opinion in *D.R. Horton* on cases supposedly holding that the NLRA and Norris–LaGuardia Act afford nonwaivable rights to pursue class claims; and Johnmohammadi follows suit here. But the cases on which they rely

25

actually hold only that employees can't be fired for filing a lawsuit (whether individually or as a class action), not that employees have an absolute right to have their substantive claims adjudicated in court or on a class-wide basis. *See, e.g.*, *Eastex, Inc. v. NLRB*, 437 U.S. 556, 566 (1978) (NLRA "protects employees from retaliation by their employers when they seek to improve working conditions through resort to administrative and judicial forums"); *NLRB v. Harco Trucking, LLC*, 344 NLRB 478 (2005); *NLRB v. Mojave Elec. Coop.*, 327 NLRB 13 (1998), *enf'd*, 206 F.3d 1183 (D.C. Cir. 2000); *NLRB v. United Parcel Serv., Inc.*, 252 NLRB 1015 (1980), *enf'd*, 677 F.2d 421 (6th Cir. 1982); *see also Brady v. National Football League*, 644 F.3d 661 (8th Cir. 2011) (plaintiffs engaged in "concerted activity" by filing a lawsuit, so Norris–LaGuardia Act's anti-injunction provisions applied); *Salt River Valley Water Users' Ass'n v. NLRB*, 206 F.2d 325, 328 (9th Cir. 1953) (employee could not be fired for circulating petition seeking power of attorney to represent coworkers in negotiations or possible court actions).[13] As for *NLRB v. Superior*

---

[13]    Equally misplaced is Johnmohammadi's reliance on the Supreme Court's statement that "'[t]here is no indication that Congress intended to limit [Section 7 of the NLRA] to situations in which an employee's activity and that of his fellow employees combine with one another in any particular way.'" Br. 14 (quoting *NLRB v.*

*Tanning Co.*, 117 F.2d 881, 890 (7th Cir. 1940), and *NLRB v. Stone*, 125 F.2d 752, 756 (7th Cir. 1942), the courts held that employers have the right to enter into individual contracts with their employees; they just can't ask their employees to sign away all rights to join a union, bargain collectively, or go on strike.

Indeed, the NLRB's own General Counsel had previously explained as much, declaring in a Guideline Memorandum that the NLRA and the FAA are not in conflict because the relevant substantive guarantee of the NLRA is only that employees may not be "disciplined or discharged for exercising rights under Section 7 by attempting to pursue a class action claim." GC Memo. 10-06, at 6, *available at* http://tinyurl.com/bvv7j8o). As the Board's General

---

*City Disposal Sys. Inc.*, 465 U.S. 822, 835 (1984). The Supreme Court's next sentence is the key to understanding the Court's meaning: "Nor, more specifically, does it appear that Congress intended to have this general protection withdrawn in situations in which a single employee, acting alone, participates in an integral aspect of a collective process." *Id.* In other words, the terms collective and concerted action, as used in the NLRA, include a single employee "acting alone" to bring individual claims based on rights obtained through collective bargaining. Under *City Disposal*, the arbitration agreement here facilitates rather than frustrates collective action, by affording a speedy, inexpensive forum for employees to bring such claims.

Counsel admonished, whether such actions can proceed to judgment, and in what forum, are "normally determined by reference to the employment law at issue and do[] not involve consideration of the policies of the National Labor Relations Act." *Id.* at 5. Not only is that interpretation eminently reasonable, consistent with the decisions of the federal courts, and the view that the NLRB itself took until it made a U-turn, but it appropriately avoids any direct conflict between the FAA and the NLRA, and hence obviates having to choose between the statutes.

6.  Beyond all that, *D.R. Horton* rests at least as much on the Board's interpretations of the FAA and the Norris–LaGuardia Act as it does on an interpretation of the NLRA. *See, e.g.*, *D.R. Horton*, 357 NLRB No. 184, at 7 (Norris–LaGuardia Act); *id.* at 10-16 (FAA). Because the Board has no jurisdiction or regulatory authority under either of those statutes, its views on them are not entitled to any deference. *See Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 143-44 (2002) (listing cases denying deference to NLRB's interpretations of federal mutiny statute, Bankruptcy Code, antitrust policy, and Interstate Commerce Act, and explaining that "we have…never deferred to the Board's remedial preferences where such

28

preferences potentially trench upon federal statutes and policies unrelated to the NLRA"); *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 529 n.9 (1984) ("While the Board's interpretation of the NLRA should be given some deference, the proposition that the Board's interpretation of statutes outside its expertise is likewise to be deferred to is novel.").

## II.    Affirmance Of The District Court's Decision Will Benefit Employees, Businesses, And The National Economy.

In Johnmohammadi's view, even an entirely voluntary waiver of the option to bring class actions is a *per se* violation of the federal right to undertake concerted action, regardless of the basis for the substantive legal claims. But as the Supreme Court recognized in *Concepcion* and *Stolt-Nielsen*, arbitration is by its very nature individualized; superimposing collective- or class-action procedures on it would sacrifice the cost savings, informality, and expedition of traditional, individual arbitration. As a practical matter, given these trade-offs, no company would willingly enter into collective or class arbitration. *See Concepcion*, 131 S. Ct. at 1752 ("[w]e find it hard to believe that defendants would" enter into agreements permitting class arbitration); *Stolt-Nielsen*, 130 S. Ct. at 1775 ("class-action

arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator").

Companies would simply abandon arbitration altogether. Thus, what Johnmohammadi is really arguing is that arbitration should never be permitted in any employment-related context; and that would be the practical effect of a ruling in her favor.

It would also be a grave loss to employees, businesses, and the economy as a whole.

Arbitration is faster, easier, and less expensive than litigation. The Supreme Court has repeatedly observed, therefore, that "arbitration's advantages often would seem helpful to individuals…who need a less expensive alternative to litigation." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280 (1995); *see also*, *e.g.*, *Concepcion*, 131 S. Ct. at 1749 ("the informality of arbitral proceedings…reduc[es] the cost and increas[es] the speed of dispute resolution"); *Stolt-Nielsen*, 130 S. Ct. at 1775 (observing that "the benefits of private dispute resolution" include "lower costs" and "greater efficiency and speed"); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 257 (2009) ("Parties generally favor arbitration precisely because

30

of the economics of dispute resolution."). Indeed, the Supreme Court has noted that employees are often the particular beneficiaries of arbitration: "Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts." *Circuit City*, 532 U.S. at 123.

These benefits of arbitration are especially pronounced for employees with individualized claims that are not amenable to being brought on a class or collective basis—the most common type of employee dispute. If employees did not have access to simplified, low-cost arbitration and were forced into court to adjudicate disputes, they would very often be priced out of the judicial system entirely, and hence would be left with no recourse or means to seek redress of their grievances. By contrast, the American Arbitration Association frequently handles employment disputes involving modest sums, making it possible for employees to bring claims that otherwise would have gone unremedied. *See, e.g.*, Elizabeth Hill, *AAA Employment Arbitration: A Fair Forum at Low Cost*, 58 DISP. RESOL. J. 9, 11 (2003). For many employees, in other words, "it looks like

arbitration—or nothing." Theodore J. St. Antoine, *Mandatory Arbitration: Why It's Better Than It Looks*, 41 U. MICH. J.L. REFORM 783, 792 (2008).

Employees also benefit from the informality of arbitration, which frees them from the procedural and evidentiary hurdles that often stymie plaintiffs in traditional, in-court civil litigation. *See*, *e.g.*, JOHN W. COOLEY & STEVEN LUBET, ARBITRATION ADVOCACY ¶ 1.3.1, at 5 (2d ed. 2003). Likely for that reason, employees tend to fare better in arbitration: Studies have shown that those who arbitrate their claims are more likely to prevail than are those who go to court. *See*, *e.g.*, Lewis L. Malty, *Private Justice: Employment Arbitration and Civil Rights*, 30 COLUM. HUM. RTS. L. REV. 29, 46 (1998).

For example, one study of employment arbitration in the securities industry found that employees who arbitrated were 12% more likely to win their disputes than were employees who litigated in the Southern District of New York. *See* Michael Delikat & Morris M. Kleiner, *An Empirical Study of Dispute Resolution Mechanisms: Where Do Plaintiffs Better Vindicate Their Rights?*, 58 DISP. RESOL. J. 56, 58 (Nov. 2003-Jan. 2004). And the arbitral awards that the

32

employees obtained were typically the same as, or larger than, the court awards. *See id.*

Nor are employees who have grievances the only ones who benefit from arbitration. On the contrary, the benefits also extend to those who never have a dispute with their employer, because arbitration "lower[s] [businesses'] dispute-resolution costs," which results in "wage increase[s]" for employees. Stephen J. Ware, *The Case for Enforcing Adhesive Arbitration Agreements—With Particular Consideration of Class Actions and Arbitration Fees*, 5 J. AM. ARB. 251, 254-56 (2006). And the benefits do not stop there, because "whatever lowers costs to businesses tends over time to lower prices to consumers." *Id.* at 255; c*f. Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594 (1991) (customers who accept contracts with forum-selection clauses "benefit in the form of reduced fares reflecting the savings that the [company] enjoys by limiting the fora in which it may be sued").

If Johnmohammadi's arguments were accepted and the decision below were reversed, all these benefits would be lost. Employees, consumers, businesses, and the national economy would all be worse off; and the many employment disputes in this Circuit that are

routinely and effectively arbitrated every day would be diverted to an already clogged court system—the very scenario that the FAA was designed to prevent.

## CONCLUSION

This Court should affirm the district court's order granting Bloomingdale's motion to compel arbitration.

Respectfully submitted,

/s/ Andrew J. Pincus

| | |
|---|---|
| Robin S. Conrad | Andrew J. Pincus |
| Shane B. Kawka | Evan M. Tager |
| NATIONAL CHAMBER LITIGATION | Archis A. Parasharami |
|    CENTER, INC. | Richard B. Katskee |
| 1615 H Street, NW | MAYER BROWN LLP |
| Washington, DC 20062 | 1999 K Street, NW |
| (202) 463-5337 | Washington, DC 20006 |
| | Telephone: (202) 263-3000 |
| | Facsimile: (202) 263-3300 |

*Counsel for* Amicus Curiae

December 19, 2012

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a) AND CIRCUIT RULE 32.1 FOR CASE NUMBER 12-55578

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type-Style Requirements

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because:

   ☒ it contains 6,957 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   ☐ it uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with typeface requirements of Fed. R. App. P. 32(a)(6) because:

   ☒ it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Century Schoolbook, *or*

   ☐ it has been prepared in a monospaced typeface using _____ with _____.


       /s/ Andrew J. Pincus
       Andrew J. Pincus
       *Counsel for* Amicus Curiae

December 19, 2012

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 19, 2013. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system. I further certify that one of the participants in the case is not a registered CM/ECF user. I have therefore mailed the foregoing document by First-Class Mail, postage prepaid, to the following non-CM/ECF participant:

David E. Martin
Macy's Law Department
Suite 1750
611 Olive Street
St. Louis, MO 63101


/s/ Andrew J. Pincus
Andrew J. Pincus
*Counsel for* Amicus Curiae